**In re WESTERN PACIFIC AIRLINES, INC., a Delaware corporation, Debtor.**

**BOULLIOUN AIRCRAFT HOLDING CO., INC., Appellant,**

**v.**

**WESTERN PACIFIC AIRLINES, INC. and Smith Management Co., Appellees.**

No. Civ.A. 97–K–2564.
Bankruptcy No. 97–24701 SBB.

United States District Court,
D. Colorado.

Jan. 12, 1998.

Susan M. Freeman, Lewis & Roca, Phoenix, AZ, Daniel F. Warden, Bond & Morris, P.C., Denver, CO, Ballard, Spahr, Andrews & Ingersoll, Denver, CO, for plaintiff/appellant.

Russell O. Stewart, Christian C. Onsager, Michael J. Pankow, Faegre & Benson, Denver, CO, David T Brennan, Otten, Johnson, Robinson, Neff & Ragonetti, P.C., Denver, CO, Howard R. Tallman, James T. Markus, John Frederick Young, Block, Markus & Williams, LLC, Denver, CO, for defendant/appellee.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

This is an expedited appeal by Boullioun Aircraft Holding Company, Inc. and Boul-lioun Portfolio Finance I, Inc. (jointly, "Boullioun"), who lease certain aircraft operated by the debtor-in-possession, Western Pacific Airlines, Inc. ("WestPac"). Boullioun appeals from Judge Brooks's December 3, 1997 Order Authorizing Debtor to Obtain Postpetition Financing Pursuant to Sections 364(c)(1) and 364(d) of the Bankruptcy Code, as amended by Judge Brooks's specific Findings of Fact and Conclusions of Law dated December 10, 1997 (the "Order").

The Order authorized WestPac to obtain up to $30 million in additional financing under 11 U.S.C. § 364 and, over the objection of Boullioun, to assume and assign the aircraft leaseholds of Boullioun (and others) without their consent pursuant to 11 U.S.C. § 365(f). Several of these lessors, including Boullioun, appealed. None, however, sought or obtained a stay of the Order pending appeal.

The day after the December 3 Order, the lender disbursed $10 million to WestPac. Funds, including $1.7 million to Boullioun, were transferred directly to aircraft lessors for lease payments. As a result, certain of the appellant-lessors withdrew their appeals. Boullioun did not.

Boullioun contends its purpose on appeal is not to challenge the post-petition loan transaction itself (Boullioun concedes it accepted its $1.7 in loan proceeds) but to enforce its nonmonetary rights under 11 U.S.C. § 1110 to prevent the assignment of its leaseholds without its consent. Section 1110 of the Bankruptcy Code provides special protections to suppliers of aircraft in the event of default, stating the suppliers' right to repossess aircraft collateral "is not affected by section 362, 363, or 1129 [of the Code] or by any power of the court to enjoin the taking of possession" (unless the debtor agrees to cure or complies otherwise with other provisions of the statute Boullioun apparently believes are not applicable here). Boullioun contends the bankruptcy court erred in permitting WestPac to assume and assign its leases as a means of collateralizing the post-petition loan because doing so violated Boullioun's rights under § 1110.

In short, Boullioun argues § 1110 should "trump" § 365(f). Boullioun seeks a ruling that, while it was not error to have authorized the post-petition loan, it was error to have collateralized it with Boullioun's leaseholds in contravention of § 1110. Boullioun asks that the Order be amended to remove the security interest in its aircraft leases or, alternatively, for a ruling that, notwithstanding the Order, Boullioun is entitled to repossess its aircraft. WestPac disputes Boullioun's analysis of § 1110, but urges the dismissal of the appeal outright on grounds of mootness.

■ WestPac asserts that the protections afforded post-petition lenders pursuant to 11 U.S.C. § 364(e) render Boullioun's appeal moot. Section § 364(e) provides that "[t]he reversal or modification on appeal of an authorization under this section to obtain credit or incur debt, or of a grant under this section of a priority or a lien, does not affect the validity of any debt so incurred, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization ... or granting of such priority or lien, were stayed pending appeal." The purpose of the section is "to overcome people's natural reluctance to deal with a bankrupt firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge." *In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir.1982).

Thus, the disbursement of a postpetition loan authorized by the bankruptcy court creates a superpriority lien insulated from the effects of modification or reversal on appeal absent a stay. WestPac relies on § 364(e) to argue that, where a lender extends credit in good faith under § 364 and the authorization appealed from has not been stayed, the proper course is to dismiss and appeal as moot.

Boullioun relies on *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552 (3d Cir.1994), to argue that the mootness inquiry does not end

with § 364(e). Where, as here, an appeal seeks not the undoing of the loan or reversal of the authorization for it, but some different form of "meaningful relief," Boullioun argues that under *Swedeland*, dismissal on mootness grounds is not automatic. Instead, the question proceeds to the next step of a mootness inquiry namely, for determination as to whether meaningful relief other than the unwinding of the loan can be fashioned on appeal.

*Swedeland* is inapplicable in the instant case. In *Swedeland*, unlike here, the appeal targeted proceeds of an approved § 364 loan that had yet to be disbursed by the lender. Under these circumstances, the Third Circuit reasoned, the lender stood as any other who had given a loan commitment and whose expectations could be frustrated by changes or modifications to the loan transaction on appeal. *See Swedeland*, 16 F.3d at 561. Seeing "no reason" why § 364(e) should be understood to protect a lender with respect to money it has not disbursed, the Court refused to dismiss the appeal because "meaningful relief" could be granted simply by prohibiting the post-petition lender from making further advances. *Id.* Because the relief Boullioun seeks is categorically different and involves the altering and diminishment of the security upon which the lender has already relied to disburse millions of dollars in financing, the rationale in *Swedeland* does not apply.

I agree with WestPac that the mootness inquiry begins and ends with § 364(e). WestPac relies on *In re Clinton Street Food Corp.*, 170 B.R. 216, 219–20 (S.D.N.Y.1994), a case in which a similar appeal challenging the security provisions of a post-petition financing order was dismissed under § 364(e). The *Clinton Food* case is on point. Boullioun's efforts at oral argument to distinguish *Clinton Food* are unavailing.

The District Court in *Clinton Food* rejected the same argument advanced by Boullioun here as requiring a "'crabbed reading of section 364(e)' inconsistent with congressional intent." 170 B.R. 216, 220 (quoting the bankruptcy court). The Court found the provision for collateralization challenged by the creditor was "an integral part of the bargained-for consideration for [the post-pe-

tition] financing." *Id.* Section 364(e), the Court reasoned, "is not susceptible to the 'crabbed' interpretation that would [allow the financing to go forward but would] exclude protection of [the lender's] bargained-for collateralization provisions." *Id.* Boullioun's position on appeal requires just such a "crabbed reading" of § 364(e).

■ The protections afforded lessors of aircraft under 11 U.S.C. § 1110 do not alter this conclusion. As an initial matter, Judge Brooks fully considered Boullioun's arguments regarding § 1110 and I find his analysis of the issue sound. Boullioun's reading of § 1110 cannot be reconciled with either the language of § 364(e) or its purpose. Moreover, I note the Historical and Statutory Notes to § 1110 provide that it is intended to protect a limited class of financiers of aircraft and vessels and should, therefore, "be narrowly construed." By its terms, repossession under § 1110 is the exception, not the rule. A debtor has ample opportunity by its terms to avoid repossession within certain time frames given proper assurances and the court's approval. In my view, the protections afforded Boullioun under § 1110 as a lessor of aircraft must be read in harmony with § 364 and with Chapter 11's overall purpose of rehabilitating the debtor and allowing it to continue in business.

In sum, I find WestPac's argument based on § 364(e) persuasive. The nature and risk of extending post-petition financing to a Chapter 11 debtor are such that no lender would be willing to do so without assurances that the collateralization provisions for which it bargained in good faith are secure in the absence of a stay. I agree with the decision in *In re Clinton,* and rule that Boullioun's attempt to alter the collateralization provisions of the Order without invalidating the loan itself (or the $1.7 million Boullioun has already received pursuant to it), is an attempt to have its cake and eat it, too. Boullioun's failure to seek or to obtain a stay of the bankruptcy court's Order renders the appeal moot under § 364(e). The appeal is DISMISSED.