In re WESTERN PACIFIC AIRLINES, INC., a Delaware corporation, Debtor.

WESTERN PACIFIC AIRLINES, INC., and Smith Management, Inc., Appellants,

v.

GATX CAPITAL; Aircorp, Inc.; Sunrock Aircraft; CCA, KG Leasing & Mercury; Sabre Group, Inc.; and Orix; Appellees,

and

Babcock & Brown Aircraft Management, and Boullioun Aircraft Holding Co., Inc., Appellees and Cross–Appellants.

Civ.A. No. 98–K–358.
Bankruptcy No. 97–24701 SBB.

United States District Court, D. Colorado.

March 10, 1998.

Christian Onsager, Michael J. Pankow, Faegre & Benson, L.L.P., Denver, CO, for Western Pacific Airlines.

David T. Brennan, Otten Johnson, Denver, CO, for Smith Management Inc.

Tucker K. Trautman, Ireland, Stapleton, Pryor & Pascoe, P.C., Denver, CO, for GATX Capital.

M. Frances Cetrulo, Berenbaum, Weinshienk & Eason, P.C., Denver, CO, for Sunrock Aircraft.

Glenn W. Merrick, Brega & Winters, Denver, CO, for Sabre Group, Inc.

Dennis O. Olson, Elson, Gibbons, Sartain, Nicoud, Birne, Sussman & Gueck, L.L.P., Dallas, TX, for Aircorp, Inc.

Paul Rubner, Rubner & Kutner, Denver, CO, for CCA, KG Leasing & Mercury.

William J. Rochelle III, Fulbright & Jaworski, L.L.P., New York City, for Orix.

Duncan E. Barber, Philip C. Zimmerman, Holme, Roberts & Owen, L.L.P., Denver, CO, for Babcock & Brown.

Daniel F. Warden, Bond & Morris, P.C., Denver, CO, Susan M. Freeman, Lewis & Rocha, L.L.P., Phoenix, AZ, for Boullioun.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Before me is a series of expedited appeals and cross-appeals in the Western Pacific ("WestPac") bankruptcy proceedings. These appeals challenge the bankruptcy court's oral rulings of February 9 and 12, 1998, which compelled Chapter 11 debtor WestPac to cure its defaults on various aircraft leases within 72 hours or allow lessors immediate possession of their aircraft ("February 9 Ruling") and then, upon WestPac's failure to so cure, allowed the lessors to enforce cross-default provisions and terminate their leases with WestPac ("February 12 Ruling"). WestPac and its post-petition lenders Energy Management Corporation and Sundance Venture Partners L.P. II (affiliates of named Appellant Smith Management and collectively referred to on appeal as the "DIP Lenders") assert these rulings were premised on an erroneous construction of 11 U.S.C. § 1110 and improperly impaired the DIP Lenders', security interest in the leases and other protections afforded by the court in an earlier order authorizing the postpetition financing.[1] In cross-appeals, two of the aircraft lessors challenge the bankruptcy court's decision to allow WestPac additional time to cure.

I granted WestPac's Motion to Expedite Appeal and Briefing Schedule and heard argument from all parties on March 4, 1998. At the conclusion of oral argument, I took the matter under advisement and began work on my decision. The following day, the bankruptcy court issued a written Memorandum Opinion and Order memorializing its February 9 ruling. Accordingly, my review

---

1. I affirmed the Order Authorizing Debtor to Obtain Postpetition Financing Pursuant to Sections 364(c)(1) and 364(d) in a separate appeal by one of the affected aircraft lessors. *Boullioun*

*Aircraft Holding Co., Inc. v. Western Pacific Airlines, Inc. (In re Western Pacific Airlines, Inc.),* 216 B.R. 437 (D.Colo.1998).

necessarily includes the written decision dated March 5, 1998, *nunc pro tunc* to February 9. Mindful of the bankruptcy court's considerable efforts to resolve difficult issues of first impression and to weigh the "delicate balance of rights" involved, I nevertheless am constrained to reverse.

## I. *THE BANKRUPTCY COURT'S ORDERS AND ISSUES ON APPEAL.*

The events giving rise to these appeals began in late fall of 1997. WestPac filed its Chapter 11 petition in early October. At that time, WestPac operated a fleet of 18 leased 737 aircraft. Its cash nearly depleted, WestPac faced immediate shutdown and default on its leases if it did not obtain substantial post-petition financing. Section 1110 of the Code, which affords aircraft lessors certain special rights to retake possession of their airplanes in the event of a debtor's default notwithstanding the automatic stay or other authority of the bankruptcy court to enjoin such action, requires the debtor, among other things, to cure defaults that occurred before the order for relief in bankruptcy within 60 days. Here, the sixtieth day fell on or about December 4, 1997.

By late November/early December, West-Pac had negotiated a credit agreement with the DIP Lenders for up to $30 million in postpetition financing to cure the defaults and continue operations during the Chapter 11 proceedings. Given the riskiness of the loan and the limited collateral available to secure it, the DIP Lenders insisted on an array of special Bankruptcy Code protections, including a superpriority administrative expense claim and a first priority lien on all unencumbered assets under § 364(c)(1) and (d). In addition, they sought the right under § 365(f) to direct WestPac to assume and assign any aircraft lease to a party designated by the DIP Lenders and to collect all proceeds of such an assignment, including any amounts paid by the assignee over and above the rates paid by WestPac.[2]

After 11 hours of hearing and over the vigorous objection of the aircraft lessors, the

bankruptcy court approved the credit agreement on December 3, 1997. *See* Order Authorizing Debtor to Obtain Postpetition Financing Pursuant to Sections 364(c)(1) and 364(d) of the Bankruptcy Code (dated December 3, 1997), as amended by Findings of Fact and Conclusions of Law (dated December 10, 1997). The Order expressly granted the DIP Lenders the right to direct the assumption and assignment of aircraft leases and to collect the proceeds of any assignment. Relying on the court's Order, the DIP Lenders immediately began to disburse funds to WestPac to cure defaults under the aircraft leases. A total of $23 million was disbursed over seven weeks.

At the December 3 hearing, WestPac verbally stated that it intended to cure all existing lease defaults by December 4, 1997, or by the thirtieth day after the default occurred, whichever was later, and then to continue paying the leases on a current basis. Slip op. at 3. WestPac in fact cured its existing defaults, kept possession of all its leased aircraft, and used them in continuing operations until late January 1998, when the DIP Lenders essentially "pulled the plug" on WestPac. The Lenders invoked their right under the credit agreement to fund West-Pac's draw requests only on an item-by-item basis. Several lease payments became due but were not paid. On February 4, West-Pac's board voted to cease operations.

The aircraft lessors promptly filed motions with the bankruptcy court, arguing they were entitled to the immediate possession of their aircraft under 11 U.S.C. § 1110. The bankruptcy court agreed, ruling that, once a debtor commits under § 1110(a)(1) to cure existing defaults within the statutory cure period and to perform under the terms of its prepetition lease, its opportunities to avoid repossession under the statute are exhausted and any later default will be governed by the prepetition lease terms. In short, the bankruptcy court construed the cure provisions of 1110(a)(1)(B)(i) and (ii) as applying solely to those defaults that occur before the bankruptcy petition is filed or within 60 days

---

**2.** According to WestPac and the DIP Lenders, the extent to which some or all of the leases were below market constituted potential "equity" that

could be realized by the DIP Lenders upon assignment or by the Debtor in liquidation.

thereafter and rejected WestPac's assertion that a debtor retains a 30-day right to cure any default throughout the life of the bankruptcy proceedings. Slip. op. at 4, 8–9.

In so ruling, the bankruptcy court recognized it had "immediately, summarily and irrevocably strip[ped] the Debtor of any opportunity to cure ... and thereby salvage any value of the DIP Lender's collateral" and that this was "financially catastrophic" for the Debtor and the DIP Lenders. Slip. op. at 11. Considering the "unfair[ness]" of the result given that it constituted the "very first legal guidance the parties have had on the question," the court exercised its authority under §§ 365(d)(10) and 105 of the Code to afford WestPac an additional window of 72 hours to cure as a matter of equity. Upon expiration of this additional grace period, however, those lessors to which cure payments had not been made would be entitled to "immediately and unilaterally take complete control and possession of their aircraft." Slip op. at 11.

WestPac made certain cure payments on February 12, 1998, but did not make others. Notwithstanding these payments, the bankruptcy court not only allowed the lessors immediately to take possession of their aircraft, but also allowed several of them to enforce cross-default provisions in their leases such that the leases were terminated in their entirety.

On appeal, WestPac urges me to reconsider the bankruptcy court's construction of § 1110 and to afford the 30-day cure provision of § 1110(a)(1)(B)(ii) its plain meaning. According to WestPac, § 1110 affords aircraft lessors with automatic relief from stay "beyond any power of the court" to enjoin, but only when a default under a lease, whether it occurs before *or after* the sixtieth day, remains uncured for 30 days. According to WestPac, this plain reading of the statute affords aircraft financiers with special protections in addition to those afforded other types of lessors under § 365(d) while balancing the interests of debtors over the life of the Chapter 11 proceedings.

The DIP Lenders join WestPac's arguments on appeal, but offer an additional perspective largely ignored by the bankruptcy court. They assert, and I agree, that the "delicate balance" the bankruptcy court attempted to strike between the rights of aircraft lessors and debtor-lessees in bankruptcy failed to consider the rights and expectations of the post-petition lenders recognized under § 364(c) and (e).

Here, the bankruptcy court issued a previous order specifically granting the DIP Lenders the right to direct WestPac to assume and assign (i.e. leverage) its aircraft leases as security for extensive postpetition loans. Barely two months later, the bankruptcy court issued a series of rulings governing the relationship between WestPac and the lessors that culminated in the termination of the leases without regard to the Lenders' interest in them or their reliance on the earlier order.

While the bankruptcy court's construction of the § 1110(a)(1)(B)(ii) 30-day cure provision itself is not unreasonable, its expansive reading of the statute generally and failure to construe it *in pari materia* with other provisions of the Code requires reversal. Section 1110 provides special relief based upon distinctive economic circumstances in the aircraft industry. It does not, however, create a new and different Bankruptcy Code. I interpret § 1110 to provide for exigent circumstances so as to return the bankruptcy proceedings to orthodox administration.

I conclude the limited exception to the automatic stay afforded lessors under § 1110 never went into effect in this case because WestPac satisfied the conditions of § 1110(a)(1)(A) and (B) within the requisite 60 day period. Once WestPac did so, the parties' rights and obligations, and any subsequent defaults under the leases, were governed by the more general provisions of the Code, including §§ 362, 364 and 365.

## II. *DISCUSSION.*

When a company enters bankruptcy proceedings, the Code automatically imposes a stay prohibiting, among other things, any act to obtain possession of property from the debtor's estate or to collect on a claim against the debtor. The automatic stay permits the debtor to conserve the value of its estate by giving it time to reorganize its

business and debts or to liquidate its assets. It is "one of the fundamental debtor protections provided by the bankruptcy laws." Notes of Committee on the Judiciary, S.Rep. No. 95–989, *reprinted in* Historical and Revision Notes, 11 U.S.C. § 362.

Section 1110 of the Bankruptcy Code provides lessors/financiers of aircraft and similar equipment an exception to the automatic stay, allowing them, under certain circumstances, to avoid the stay and retake possession of financed equipment after an order for relief under Chapter 11 has been entered. 11 U.S.C. § 1110(a)(1) (and the Historical and Revision Notes thereto).[3] *See generally* K. Hoff–Patrinos, Aviation Finance Revisited: The 1994 Amendments to Section 1110 of the Bankruptcy Code, 69 Am.Bank.L.J. 167 (Spring 1995) (hereafter, "Hoff–Patrinos"). The right afforded lessors under § 1110(a)(1) is "exceptional," allowing the lessor who falls within its coverage to take assets out of the debtor's estate while other secured creditors are prevented from doing so by the automatic stay. Hoff–Patrinos, *supra,* p. 194. Accordingly, the right of the lessor is balanced by the right of the debtor to avoid triggering it in the first instance by reaffirming its commitment to perform under the lease and by curing pre- and post-petition defaults within the prescribed 60-day period. *See* § 1110(a)(1)(A), (B), *discussed in* Hoff–Patrinos at p. 197.

There is no dispute in this case that West-Pac complied with the provisions of § 1110(a)(1)(A) and (B) within the 60-day period. As the bankruptcy court determined on December 3, WestPac agreed to perform its obligations under its leases as they became due and, on December 4, the sixtieth day, cured its defaults by making payment. The question for the bankruptcy court, and for me on appeal, is the construction of § 1110 in the event of a later default under the reaffirmed lease. As the bankruptcy court stated in its decision, this is a question of first impression.

WestPac argued that its right to cure post-petition defaults continued after the 60-day period expired to include not only those defaults that occurred during the 60-day period, but also any additional defaults that occurred thereafter. WestPac based its assertion on the "plain language" of subsection (a)(1)(A) and (B)(ii), which allow the debtor-in-possession to avoid the lifting of the automatic stay by agreeing to perform its obligations under the lease ((a)(1)(A)) and then seeing that "any default ... that occurs after the date of the order is cured before ... the date that is 30 days after the date of the default ..." (a)(1)(B)(ii)(I). The lessors disagreed, arguing that the 30-day cure applies only to those defaults occurring after the date of the order but before the sixtieth day thereafter. According to the lessors, while a debtor may enjoy a respite from the lifting of the automatic stay by complying with § 1110(a)(1)(A) and (B) within the prescribed 60-day period, any subsequent default by the debtor after the sixtieth day triggers the lifting of the stay and subjects the debtor not only to repossession of the leased equipment, but also to any other contractual default provision under the lease. The bankruptcy court agreed with the lessors.

■■■ Both sides misconstrue the purpose and effect of § 1110 by failing to consider it in the context of the Bankruptcy Code as a

**3.** The relevant text is as follows:

(a)(1) The right of a secured party with a security interest in [aircraft] equipment ... or of a lessor or conditional vendor of such equipment to take possession of such equipment in compliance with a security agreement, lease, or conditional sale contract is not affected by section 362, 363, or 1129 or by any power of the court to enjoin the taking of possession unless—

(A) before the date that is 60 days after the date of the order for relief under this chapter, the trustee, subject to the court's approval, agrees to perform all obligations of the debtor that become due on or after the date of the order under such security agreement, lease, or conditional sale contract; and

(B) any default, other than a default of a kind specified in section 365(b)(2), under such security agreement, lease, or conditional sale contract—

(I) that occurs before the date of the order is cured before the expiration of such 60–day period; and

(ii) that occurs after the date of the order is cured before the later of—

(I) the date that is 30 days after the date of the default; or

(II) the expiration of such 60–day period.

\* \* \*

whole and by seeking to extend its effect beyond its terms. Section 1110 was enacted to protect a specific and narrowly defined class of financiers and should be narrowly construed. *In re Western Pacific Airlines,* 216 B.R. 437, 1998 WL 10598, slip op. at 5 (referencing Historical and Revision Notes to § 1110). It serves a limited function, providing lessors of aircraft equipment (and other lessors/financiers falling within its scope) with relief from the automatic stay *unless* the trustee or debtor-in-possession reaffirms its lease obligations and cures its defaults within a statutorily prescribed period.[4] 11 U.S.C. § 1110(a)(1). Once the debtor does so, the section has served its purpose. The lessor is not entitled to an automatic lifting of the § 362 stay and the debtor-in-possession or trustee is not entitled to a continuing 30-day period to cure any subsequent defaults. The parties and their leases are governed thereafter by other, generally applicable provisions of the Code. *E.g.,* 11 U.S.C. § 365.

 In sum, § 1110 affords aircraft lessors with an inchoate right to override the automatic stay and retake possession of their valuable equipment. The right vests only at the end of the statutorily prescribed period (whether that is 60 days or 90 days) and only if the debtor-in-possession or trustee fails, within that time period, to cure its defaults and to agree to perform under the prepetition terms of the lease from the date of the order forward. If the debtor emerges from the 60/90 day period with current payments and a renewed agreement to comply with its lease terms, then the lessor's potential automatic right to a lifting of the automatic stay terminates and it assumes the status of any other lessor/creditor in bankruptcy. Its lease may be subject to assumption and assignment by the trustee or debtor-in-posses-

sion, even if the debtor is in default. 11 U.S.C. § 365(a), (b). It may be subject to the superior rights of a post-petition lender under § 364.

Contrary to the lessors' assertions at oral argument, such a construction does not thwart Congress's intent to provide them with special treatment under the Code. Where, as here, the debtor avoids the lifting of the automatic stay by complying with § 1110(a)(1)(A) and (B), the aircraft lessor, unlike other lessors generally, will have obtained lease payments and the benefit of its bargain after the order for relief under Chapter 11 has been issued without first having to obtain relief from the automatic stay. The non-aircraft lessor's right to cure payments after the order for relief is not self-executing.

Construing § 1110 as expiring by its own terms once a debtor-in-possession emerges from the statute's 60/90 period with continued possession of its leased equipment furthers several important legal principles and policies. It acknowledges that § 1110 is an exception to the overarching and fundamental policy under the Code that a debtor is entitled to a "breathing spell" from its creditors upon the filing of a bankruptcy petition. It also acknowledges that § 1110 is special interest legislation and is intended to be narrowly construed.

This construction provides certainty and finality as to the effect and longevity of a lessor's rights under § 1110 (and the debtor-in-possession or trustee's concomitant rights to cure), which should assist both financiers and carriers to allocate risk in the provision and pricing of aircraft lease transactions. Most importantly under the circumstances of

---

4. The question of whether the 30-day provision of *§ 1110(a)(1)(B)(ii)(I) extends the 60-day period* to 90 days or affords debtors a recurring 30-day period over the life of the bankruptcy to cure defaults is something of a red herring. On its face § 1110(a)(1)(B)(ii) is amenable to both readings. I agree with the Appellants that Congress could have, if it wished, expressly limited application of the 30-day cure provision to defaults that occur "after the date of the order *but before the sixtieth day thereafter,*" but did not do so. I also agree with the bankruptcy court, however, that a more harmonious reading of (B)(ii) *is to*

view it as a grace period extending the 60-day cure period to account for defaults that occur, for example, on the fifty-ninth day. Under that circumstance, the grace period would allow the debtor 31 days to cure the default and still retain possession of the leased equipment and the benefit of the automatic stay. Without the additional grace period, the debtor would have only one day.

I decline, however, specifically to rule on the issue because it is not necessary to my decision on appeal.

this case, however, it construes § 1110 *in pari materia* with other provisions of the Code governing the rights and expectations of debtors and lessors generally, as well as the rights and expectations of post-petition lenders.

Accordingly, this matter is remanded to the bankruptcy court for further proceedings. The leases did not terminate upon WestPac's January/February defaults. To the extent WestPac seeks to assume and assign them, its ability to do so is governed by 11 U.S.C. § 365.

### III. *CONCLUSION.*

In both its oral and written decisions, the bankruptcy court characterized the issue as one of first impression involving a "delicate balance of rights accorded an airline debtor in reorganization and the special powers granted to aircraft lessors subjected to an airline-lessee's reorganization." *In re Western Pacific Airlines, Inc.,* 219 B.R. 298, 300 (Bank.D.Colo.1998). As set forth above, this balance of rights does not exist in a vacuum. Any weighing of them must include consideration of the rights afforded the DIP Lenders in the December 3 Order as well as the rights of WestPac and its other creditors under Chapter 11.

The February 9 ruling of the bankruptcy court, memorialized in its written opinion dated March 5, 1998, together with the February 12 ruling clarifying/applying it, are REVERSED. The matter is remanded to the bankruptcy court for further proceedings consistent with this opinion.