**In re BANKVEST CAPITAL CORP., Debtor.**

**Eagle Insurance Company and Newark Insurance Company, Plaintiffs–Appellants,**

**v.**

**BankVest Capital Corp., Defendant–Appellee.**

**Nos. MW 01–089, MW 01–090.**

United States Bankruptcy Appellate Panel of the First Circuit.

March 28, 2003.

Joseph S.U. Bodoff, Esq., Boston, MA, and Richard P. O'Neil, Esq. on brief for Appellants.

Jay L. Gottlieb, Esq., New York City, Arianna Frankl, Esq. and Frederic D. Grant, Jr., Esq., Boston, MA, on brief for Appellee.

Before VAUGHN, BROWN and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

VAUGHN, Bankruptcy Appellate Panel Judge.

Eagle Insurance Company ("Eagle") and Newark Insurance Company ("Newark") (collectively "Appellants") appeal from the Decision and Order ("Decision") of the United States Bankruptcy Court for the District of Massachusetts ("Bankruptcy Court") entered on December 12, 2001. *See In re BankVest Capital Corp.*, 270 B.R. 541 (Bankr.D.Mass.2001). The Decision denied the Appellants' request for the payment of cure costs pursuant to § 365 of the United States Bankruptcy Code (the "Code") and BankVest Capital Corporation's ("Debtor's" or "Appellee's") confirmed plan of reorganization.[1] For the reasons set forth below, the Decision of the Bankruptcy Court is affirmed.

## BACKGROUND

The Appellants entered into separate Master Equipment Lease Agreements (collectively, "Lease Agreements") with LeaseVest Capital Corp. ("LeaseVest") and the Debtor on May 27, 1999. Pursuant to the Lease Agreements, Eagle and Newark were to lease approximately 190 pieces of computer equipment from Lease-Vest and the Debtor for monthly rental payments of $11,940.61 and $10,111.82, respectively. However, the Appellants only received some of the equipment, plus 20 pieces of "loaner equipment" from Lease-Vest and the Debtor's vendor, Nortel.

The Debtor was placed into an involuntary bankruptcy on December 17, 1999, before the loaner equipment was replaced. The Debtor's reorganization plan indicated that all parties which required cure costs pursuant to § 365 file such requests before the effective date of the order confirming the plan.[2] The Appellants filed their claims for payment of cure costs on June 15, 2001, asserting that the Debtor's breach could not be cured. To the extent the breach could be cured, the Appellants sought damages.[3] App. at 111, 133. Finova Loan Administration, Inc. ("Finova") filed an objection to the claims on August 15, 2001 on behalf of the Debtor.[4] App. at 153–72.

The Bankruptcy Court held a non-evi-

---

1. Unless otherwise noted, all statutory section references herein are to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, *et seq.*

2. Specifically, Paragraph 7.1 of the Plan and *Confirmation Order* provides:

   All equipment leases, in which the Debtor is lessor, which are part of the Owned Portfolio, the Warehouse Portfolio and such other leases as the holders of Allowed Secured Claims timely request be assumed and assigned, shall be deemed assumed upon the Effective Date unless specifically rejected on or before such date or a motion to reject regarding a particular lease is pending, or unless a claim is made on or before the Effective Date that assumption hereunder requires the Debtor pay Cure Costs to any party to an assumed contract or lease.
   App. at 55.

3. Eagle alleged total damages of $330,542.64, while Newark calculated its damages at $314,372.64. Both Appellants alleged that damages included actual damages of $88,145 consisting of additional payroll expenses ($71,075); outsourced labor ($12,000); outsourced training ($2,000); and additional repair costs ($3,070). App. at 132, 152. In addition, both sought an unspecified reduction of the lease payments for the period during which they did not have the non-delivered items. App. at 111, 133.

4. Finova and the Debtor entered into a stipulation, filed with the Bankruptcy Court on August 6, 2001, whereby Finova agreed to assume the Debtor's responsibility to defend the cure claims asserted by Eagle and Newark.

dentiary hearing[5] on November 7, 2001 and entered its Decision on December 12, 2001, sustaining Finova's objection to Appellants' claims and holding that to assume the pre-petition Lease Agreements, the Debtor had to cure only its monetary defaults, if any, and did not have to cure non-monetary defaults arising from the delivery of substituted equipment to the Appellants. App. 236–37. On December 21, 2001, the Appellants filed their notices of appeal. App. at 238–41.

## JURISDICTION

Pursuant to 28 U.S.C. §§ 158(a), the Panel may hear appeals "from final judgments, orders, and decrees." 28 U.S.C. § 158(a)(1). A final judgment "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). The instant appeal arises from a final order of the Bankruptcy Court denying the Appellants' request for cure costs pursuant to § 365 of the Code.

## STANDARD OF REVIEW

■ Generally, the Panel evaluates the Bankruptcy Court's findings of fact pursuant to the "clearly erroneous" standard of review and its conclusions of law *de novo.* *Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 30 (1st Cir.1994); *see also Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997). Following a non-evidentiary hearing, the Bankruptcy Court rendered its Decision based upon its interpretation of § 365(b)(2)(D). Therefore, the only question presented on appeal is one of law and we review the Bankruptcy Court's conclusions *de novo.* *See Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995);

*In re SPM Mfg. Corp.,* 984 F.2d 1305, 1311 (1st Cir.1993); *In re Indian Motocycle Co., Inc.,* 261 B.R. 800, 805 (1st Cir. BAP 2001).

## DISCUSSION

■ The Bankruptcy Court held that: Common sense dictates that the failure to deliver certain items is a quintessential example of a nonmonetary default. The Debtor was not required to make any payments. Indeed the money was to flow from Eagle and Newark to the Debtor. Therefore there are no cure claims to be satisfied before assumption and assignment of the leases. At best there are only claims for whatever damages Eagle and Newark can demonstrate flowed from the delivery of loaner items in place of the scheduled items. These claims need to be addressed in the context of an evidentiary hearing at which the parties will have to introduce evidence as to the claims and defenses thereto[.]

270 B.R. at 544; App. at 236–37. Thus, the central issues presented in this appeal are whether the Bankruptcy Court erred in (1) interpreting § 365(b)(2)(D) as not requiring the Debtor to cure any non-monetary defaults as a condition to assuming the Lease Agreements executed by the Appellants, and (2) finding that any claims or defenses available to the Appellants based on the Debtor's alleged non-monetary default should be addressed in the context of an evidentiary hearing in a court of competent jurisdiction. The Panel finds that the Bankruptcy Court did not err in either of its determinations.

Section 365(b) provides in relevant part: (1) If there has been a default in an executory contract or unexpired lease of

---

**5.** The Bankruptcy Court essentially treated the issues before it as a motion to dismiss, considering the Appellants' well pleaded alle-gations of fact to be true for purposes of its analysis of § 365.

the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

(2) Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to—

(D) the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform non-monetary obligations under the executory contract or unexpired lease.

11 U.S.C. § 365(b). Cure Costs are defined under the plan as "[t]hose payments and assurances required upon assumption of an executory contract or unexpired lease pursuant to 11 U.S.C. section 365(b)(1)." App. at 22.

Applying *In the Matter of GP Express Airlines, Inc.* and *In re Western Pacific Airlines, Inc.*, the Bankruptcy Court found that the plain language of § 365(b)(2)(D) supported the "interpretation that penalty rate obligation and a non-monetary default are two separate types of breaches which a debtor is not required to cure prior to assumption of a contract." *BankVest*, 270 B.R. at 543; App. at 236; *see also GP Express Airlines*, 200 B.R. 222, 233–34 (Bankr.D.Neb.1996) (determining that § 365(b)(2)(D) addresses "two separate issues .... [A] debtor is not required to

cure or satisfy any penalty rate obligation and the debtor is not required to cure any defaults in nonmonetary obligations. The statutory term 'rate' refers to interest rate.... By definition, there is no interest accrual on a nonmonetary obligation."); *Western Pacific Airlines*, 219 B.R. 298, 304 (Bankr.D.Colo.1998), *rev'd on other grounds*, 219 B.R. 305 (D.Colo.1998).

The Appellants argue that the Bankruptcy Court misinterpreted § 365(b)(2)(D), alleging that a majority of courts read the section as excusing a Debtor from curing a penalty rate or provision relating to a non-monetary default, but not the non-monetary default itself. Accordingly, they urge the adoption of *Claremont Acquisition Corp. v. General Motors Corp. (In re Claremont Acquisition Corp.)*, which holds that the word "penalty" modifies both "rate" and "provision" and, therefore, a debtor's failure to operate for seven consecutive days is not a non-monetary default that can be excused under § 365(b)(2)(D). 113 F.3d 1029 (9th Cir. 1997). The Bankruptcy Court had rejected the Ninth Circuit's interpretation of § 365(b)(2)(D), noting that both the bankruptcy and district courts in *Claremont* had interpreted § 365 as not requiring cure of debtor's past non-monetary default. 270 B.R. at 543; App. at 236.

The cases cited by the Appellants do not support their contention that a majority of courts support the *Claremont* reading of § 365. The Fourth Circuit decision cited, *Three Sisters Partners, LLC v. Harden (In re Shangra–La, Inc.)*, only addresses § 365(b)(2)(D) in dicta, noting that default rate interest penalty is not available for non-monetary default rates. *Shangra–La*, 167 F.3d 843, 848 n. 3 (4th Cir.1999). Similarly, the language cited from *In re Ernst Home Center, Inc.* by the Appellants is also dicta located in a footnote. 209 B.R. 955, 963 n. 6 (Bankr.W.D.Wash.1997). In

*Ernst,* no motion to assume had been filed. *See id.* at 958–60. The unreported decision of *In re Vitanza* is also not on point. *Vitanza,* No. 98–19611, 1998 WL 808629, 1998 Bankr.LEXIS 1497 (Bankr.E.D.Pa. Nov.13, 1998). In that case, the necessity of curing a non-monetary default was not a component of the court's holding, but the court addressed § 365(b)(2)(D) by noting that it "only relieves debtors of their obligation to pay penalties and not of their obligation to cure non-monetary defaults." *Id.* at *21, 1998 Bankr.LEXIS 1497 at *75 n. 44. The court in *Vitanza* also stated, in dicta, that:

> Most non-monetary defaults (e.g., failure to maintain the premises in a certain condition, failure to seek approval; failure to provide reasonable consent) are "historical facts." Consequently, if [the lessor's] "historical fact" theory were applied to all non-monetary defaults, it would, in effect, eliminate the right to assume a lease for which nonmonetary defaults exist. If Congress had intended to limit the right to assume to leases involving only monetary defaults, it could have so stated in § 365.

*Id.* at *24, 1998 Bankr.LEXIS 1497, at *87 n. 51.

This Panel affirms the Bankruptcy Court's plain language interpretation of § 365(b)(2)(D). In practice, if debtors had to cure non-monetary defaults, many leases could not be assumed because the cure would be impossible to accomplish. By extension, the Panel adopts the *GP Express Airlines* interpretation of § 365(b)(2)(D). However, the Panel does not adopt its holding that a separate trial needs to be held not only as to the nonmonetary defaults under contracts, but also as to the issue of whether the debtor can give adequate assurance of future performance under executory contracts.

Based on the language of the Debtor's Plan and Confirmation Order that "[a]ll equipment leases, in which the Debtor is lessor, ... shall be deemed assumed upon the Effective Date unless specifically rejected on or before such date or a motion to reject regarding a particular lease is pending, or unless a claim is made on or before the Effective Date that assumption hereunder requires the Debtor to pay Cure Costs to any party to an assumed contract or lease[,]" the present case involves assumption only. App. at 55. In order to assume, a debtor does not have to cure non-monetary defaults. However, to assign under § 365(f)(2)(B), a debtor must show an adequate assurance of future performance. This additional requirement provides protection from non-monetary defaults when a third party is involved in the transaction. If there is just an assumption, the parties can still litigate their issues of breach as if there was no bankruptcy.

Under a motion to assume or reject an executory contract, the only issue properly before a court is whether the assumption or rejection of the subject contract is based upon a debtor's business judgment. *See Orion Pictures Corp. v. Showtime Networks, Inc.,* 4 F.3d 1095, 1099 (2d Cir. 1993), *cert. dismissed,* 511 U.S. 1026, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994); *In re Docktor Pet Center, Inc.,* 144 B.R. 14, 16 (Bankr.D.Mass.1992). In *Orion,* the Second Circuit reversed both the bankruptcy and district courts and held that, in ruling on the debtor's motion to assume a contract, the bankruptcy court should not have resolved the disputed issue regarding the debtor's alleged breach of the agreement. The *Orion* court stated that:

> The bankruptcy court erred because it misapprehended the fundamental nature and purpose of a motion to assume. At heart, a motion to assume should be

448

considered a summary proceeding, intended to efficiently review the trustee's or debtor's decision to adhere to or reject a particular contract in the course of the swift administration of the bankruptcy estate.

4 F.3d at 1098. Further, in *Docktor Pet Center,* the Bankruptcy Court for the District of Massachusetts held that "a motion to assume an executory contract is generally, and should be, a summary proceeding." 144 B.R. at 16. Accordingly, the Bankruptcy Court's determination that the "parties are free to pursue whatever claims, counterclaims, and defenses they have in a non-bankruptcy court of competent jurisdiction" is consistent with the holdings of *Orion* and *Docktor Pet Center.* 270 B.R. at 544; App. at 237.

In the instant appeal, there was no issue relative to the Debtor's business judgment regarding the assumption of the Lease Agreements. Although no factual findings were made, it is undisputed that the Appellants were not entitled to any contractual payment under the terms of the Lease Agreements. If a debtor wants to assume in its business judgment, knowing that issues other than payment due may be litigated after assumption, the debtor should be allowed to do so.

### Conclusion

For the reasons set forth above, the Panel finds the Bankruptcy Court did not err in interpreting § 365(b)(2)(D) as not requiring the Debtor to cure any non-monetary defaults as a condition to assuming the Lease Agreements executed by the Appellants and finding that any claims or defenses available to the Appellants based on the Debtor's alleged non-monetary default should be addressed in the context of an evidentiary hearing in a court of competent jurisdiction. Accordingly, the Bankruptcy Court's Decision is AFFIRMED.