## In re Michael A. WILLIAMS, Sr., Janell Williams, Debtors.

### No. 03–40058–JDW.

United States Bankruptcy Court, S.D. Georgia, Savannah Division.

May 5, 2003.

R. Wade Gastin, Savannah, GA, for Debtors.

Christian J. Steinmetz, III, Savannah, GA, for Hellas Transport Co.

## MEMORANDUM OPINION

JAMES D. WALKER, JR., Bankruptcy Judge.

This matter comes before the Court on Hellas Transport Company's Motion for Relief From Stay. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(G). After considering the pleadings, the evidence, and the applicable authorities, the Court grants the motion and enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

Hellas Transport Company is in the business of transporting containers of freight. Its drivers pick up the containers at the Port of Savannah and transport them throughout the southeastern United States. The drivers are independent contractors not in the employ of Hellas. Hellas provides business for approximately 10 drivers. Of those, about half own their own trucks and the other half lease a truck owned by Hellas.

On May 29, 2002, Debtor Michael Williams entered into a lease agreement with Hellas for the lease of a 1998 Freightliner truck. The total amount due under the lease was $37,733, with a $2,000 down payment and 130 weekly installment payments of $274.87. Upon Debtor's satisfaction of all his obligations under the lease, he had the option of purchasing the truck for $2.

According to the lease, Debtor was to begin making installment payments on June 7, 2002. The lease also provided, in a handwritten paragraph initialed by both parties, as follows: "It is agreed between the parties that the truck is to remain leased to Hellas Transport for the duration of the lease." In other words, Debtor could not use the truck to do work for a

company other than Hellas. In November 2002, Debtor sought and received employment at U.S. Intermodal.[1] There is no evidence as to the nature of that company's business. However, Debtor uses the Hellas truck in the course of his employment at U.S. Intermodal. Debtor filed a joint Chapter 13 petition on January 7, 2003. Debtor made his last lease payment to Hellas on February 14, 2003.

A default provision in the lease provides that if Debtor "shall fail to perform and fulfill any of the covenants or conditions herein or to pay any sums agreed by it to be paid hereunder ... the Lessor may take immediate possession of the vehicle(s)." Hellas seeks to have the automatic stay lifted so it can recover the truck in accordance with the default provision. Debtor seeks to assume the lease by fully curing the arrearage and assuring future payment. Although Debtor stopped making payments to Hellas in February 2003, he continued to set aside the money due to Hellas, so he can promptly cure the arrearage that has accrued. The Court held a hearing on this matter on April 10, 2003.

### Conclusions of Law

The automatic stay, which went into effect at the time Debtor filed his bankruptcy petition, prevents Hellas from retaking possession of the truck. 11 U.S.C.A. § 362(a)(3) (West 1993 & Supp. 2003). However, the Court may lift the stay with respect to the truck "(1) for cause, including lack of adequate protection ...; [or] (2) ... if(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization[.]" *Id.*

§ 362(d). Because Debtor uses the truck in his employment, it is necessary to an effective reorganization. *See, e.g., American Honda Fin. Corp. v. Littleton (In re Littleton)*, 220 B.R. 710, 712 (Bankr. M.D.Ga.1998) (finding that a vehicle was necessary for reorganization because it was needed to maintain employment). Therefore, Hellas cannot prove the elements of subsection (d)(2) and must proceed under subsection (d)(1).

Whether or not Hellas' interest in the truck is adequately protected depends on whether or not Debtor can assume the lease.[2] In the event a debtor has defaulted on an unexpired lease, he cannot assume the lease unless he (1) cures the default; (2) compensates the other party for any pecuniary loss resulting from the default; and (3) adequately assures future performance of lease obligations. 11 U.S.C.A. § 365(b)(1) (West 1993 & Supp. 2003). If Debtor satisfies each of these requirements, Hellas' interest will be adequately protected so that stay relief will be unnecessary.

In this case, Debtor must cure two types of default: (1) a monetary default arising from his failure to make weekly lease payments; and (2) a nonmonetary default arising from his use of the truck in the course of his employment with U.S. Intermodal. Debtor has established that he can cure the monetary default by paying over the money he has set aside for that purpose, which leaves the question of whether he can cure the nonmonetary default.

Some courts have said that debtors are not required to cure nonmonetary defaults

---

**1.** This is inconsistent with Debtor's bankruptcy petition. Debtor filed an amended Schedule I on February 18, 2003, that names Hellas Transport as his employer. U.S. Intermodal is not mentioned. Nevertheless, the testimony of both parties indicates that Debtor currently is employed by U.S. Intermodal and no longer performs any work for Hellas.

**2.** Neither party has raised the question of whether or not the agreement is a true lease, so the Court will not address that issue.

in unexpired leases and executory contracts. *Eagle Ins. Co. v. Bankvest Capital Corp. (In re Bankvest Capital Corp.)*, 290 B.R. 443, 447 (1st Cir. BAP 2003); *In re GP Express Airlines, Inc.*, 200 B.R. 222, 234 (Bankr.D.Neb.1996). Section 365(b)(2) sets out an exclusive list of defaults that are exempt from the cure requirement, among them is "the satisfaction of any penalty rate or provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations under the executory contract or unexpired lease." 11 U.S.C.A. § 365(b)(2)(D) (West Supp. 2003). The court in *GP Express* construed subsection (D) as articulating two distinct exceptions to the cure requirement: (1) penalty rate obligations and (2) nonmonetary obligations. 200 B.R. at 233–34.

The court reasoned that "[t]he statutory term 'rate' refers to interest rate." *Id.* at 234. Because interest does not accrue on a nonmonetary obligation, the term "penalty rate" refers only "to the interest rate payable on a monetary obligation[,] and . . . the second proviso of (D) has a separate and distinct reference to nonmonetary obligations." *Id.* The court further determined that any interpretation to the contrary would result in "illogical requirements: A 'penalty rate' would be enforceable and would have to be cured on a monetary obligation but not on a nonmonetary obligation. If penalties are not favored, they should not be required to be cured in either case." *Id.* The court in *BankVest Capital* adopted the reasoning of *GP Express*, noting that "[i]n practice, if debtors had to cure non-monetary defaults, many leases could not be assumed because the cure would be impossible to accomplish." 290 B.R. at 447.

This Court is more persuaded by the opposing view, which focuses on the plain language of the statute. *Worthington v. General Motors Corp. (In re Claremont Acquisition Corp., Inc.)*, 113 F.3d 1029 (9th Cir.1997). The Ninth Circuit Court of Appeals explained:

> A proper reading of subsection (D) requires that the adjective "penalty" modify *both* the words "rate" and "provision," not just the word "rate." Furthermore, like the word "penalty," the word "satisfaction" must also define both "rate" and "provision." Stated differently, subsection (D) provides an exception from cure for satisfaction of "penalty rates" and "penalty provisions."

*Id.* at 1034. To interpret the provision as two separate clauses, as the court in *GP Express* did, would render the second clause "both grammatically incorrect and nonsensical." *Id.* The so-called second exception would read, "Paragraph (1) of this subsection does not apply to a default that is a breach of a provision relating to(D) . . . provision relating to a default arising from any failure by the debtor to perform nonmonetary obligations." *Id.* In addition, the court noted that subsections (A)—(C) each contain one exception to the cure requirement. *Id.* Thus, reading (D) as one exception is consistent with the overall structure of Section 365. *Id.*

■ The Court adopts the view asserted by the Ninth Circuit and finds that Debtor must cure his nonmonetary default in order to assume the contract. In this case, the cure is impossible. Debtor's use of the leased truck in the course of his employment with U.S. Intermodal is a historical fact that cannot be altered. Thus, Debtor is unable to assume the lease and, consequently, is unable to adequately protect Hellas' interest in the truck.

Aside from the fairly esoteric problem of curing nonmonetary defaults, Debtor is not proposing to accept the lease according to its terms, which is essential. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 531, 104 S.Ct. 1188, 1199, 79 L.Ed.2d 482 (1984).

Instead he is proposing to accept the lease excised of the provision prohibiting him from using the truck in the course of employment with any company other than Hellas. In other words, Debtor seeks to have the Court remove an onerous provision of the lease. Although there may be some basis in the law for the Court to do so-for example, the provision may create a general restraint on trade-Debtor has neither argued nor provided any evidence to show that the provision in question is void or otherwise unenforceable.

Because Debtor has failed to meet the requirements for assumption of the lease, which leaves Hellas' interest in the truck unprotected, the Court will lift the automatic stay to permit Hellas to exercise its rights with respect to the truck under the default provisions of the lease.